Mr. Justice NELSON
delivered the opinion of the court.
This 'is an action of ejectment by the heirs of William Stanley to recover for breach of condition a tract of land, situate in the city of Hartford, devised by the ancestor to an ecclesiastical society and their successors, on the 7 th October, 1786; and one of the principal questions in the case is whether or not the devise was upon a condition, which, when broken, would let in the heir, or was a limitation or trust, the breach of which would work no such consequence.
The material parts of the will are as follows:
“ I give apd devise the whole of my real estate, of every kind and description, . . . unto the Second or South' Ecclesiastical Society, in the town of Hartford, to be and remain to the use and benefit of said Second or South Society and their successors forever.” Then comes" the condition or limitation upon the devise: “Provided, that said real estate be not ever hereafter sold or'.disposed of, but the same be leased or let, and the annual rents or profits thereof applied to the use and benefit of said society, and the letting, leasing. *164 and managing of said estate to be tinder tbe management and direction of certain trustees hereafter named by me, and their successors, to be appointed in manner as hereafter directed.” And, after appointing three trustees, and prescribing the manner'of the appointment of their successors, and prescribing also their authority and duties, the testator adds: “And the aforesaid real estate, or any part thereof, shall not be rented or let for a longer term or lease than thirty years before the expiration of the same.” And another part of the will is as follows: “ And, in case said Second Society shall ever hereafter be divided, it is my will that my real estate be not divided, but remain entire and forever to the said Second Society; and such part of said Second Society as shall hereafter secede.or be dividend therefrom are hereby excluded from all the use and benefit of my real estate, so devised as aforesaid to the said Second Society.”
These are the several clauses in the will relating to the management of the estate, following the proviso, and which, taken together, constitute the conditions, limitations, or qualifications annexed to it, and to the enjoyment of the estate by the society.-
All .of them may not be equally important, but we are bound to assume that each and all of them were regarded by the testator as material in the regulations which he has seen fit to adopt and carry into his will.
These conditions or limitations following the proviso are briefly—
1. The estate is not to be soldi or disposed of, but to. be leased by trustees, and the rents paid over to the society.
2. The leasés .are ‘not to exceed thirty years in any one term.
8. The estate is not to be divided in- the event of a division of the society; and— • . ■ "
4. It is to be managed, and directed exclusively by trustees who are appointed in the will”and by their successors; the surviving trustees to appoint "when a vacancy happens.
The question is, whether these are strict common law conditions annexed to the estate, a breach of which, or of *165 any one of them, will work a forfeiture, defeat the devise, and let in. the heir ;■ or, whether they are regulations for the guide of the trustees, and explanatory of the terms under which he intended the estate should be managed, with a view to the greatest advantage in behalf of the society ?
The difference between the two interpretations and the consequences flowing from them, is very material. As we have seen, a condition, if broken, forfeits the estate, and forever thereafter deprives the society of the gift; and not only7 this, but the heirs become seized of the first estate, and avoids, of course, all intermediate charges or iucumbrances, and takes also free and clear all the expenditures and improvements that may have been laid out on the property:
On the other hand, if these limitations are to be regarded as regulations to guide the trustees, and explanatory of the terms upon which the devise has been made, they create a trust which those who take the estate are bound to perform; and, in case of a breach, a court of equity7 will interpose and enforce performance. The estate is thus preserved and devoted to the objects of the charity or bounty' Of the testator, even in case of a violation of the limitations annexed to it. A fraudulent or unfaithful trustee will be removed, and another appointed to his place. A diversion of the fund will be arrested, and an account compelled for any waste or improvident use of it.
Mr. Sugden, speaking of conditions, observes, that what by the old law was deemed a devise upou condition would now, perhaps, in almost every case, be construed a devise in fee upou trust, and, by this construction, instead of the heir taking advantage of the condition broken, the cestui que trust can compel an observance of the trust by a suit in equity.*
In the recent case of Wright v. Wilkin, in the Queen’s Bench, the court approved of this observation of Mr. Sugden, and in that case construed a devise, on express condition in terms, looking through the whole will, and regarding the intent of the testator as falling within this rule. The court *166 relied very much upon the words following the condition aa explaining away the strict common law meaning of the term, and as importing a meaning inconsistent with a strict interpretation.. This judgment was affirmed in the Exchequer.
It is true that the word “proviso” is an appropriate one to constitute a common law condition in a deed or will, but this is not the fixed and invariable meaning attached to it by the law in these instruments. On the eoutrai’y, it gives way to the intent of the parties as gathered from an examination of the whole instrument, and has frequently been thus explained and applied as expressing simply a covenant or limitation in trust. Several cases were referred to, on the argument, to this effect, and many more might have been added.
In looking at the explanatory part of the will in this case, it will be seen that the testator had in his mind a settlement of the estate in trust, for the beneficiaries, and with this view established a code of regulations to guide the trustees in the management of it that would continue through all time, and which is wholly inconsistent'with the idea that the estate might be defeated by a breach of any one of them. After appointing the three trustees, he adds: “ I do give authority and power to nominate their successors to said trust, which is to be done in the manner following: That immediately after my decease they . . . shall appoint some meet persons, ... as the occasion may require, into said trust or office, so be it that at no time more than three pei’sons shall act in said trust or office; . . . and all persons, successors hereafter to said trust and office, shall at all times in future have like power to superintend, direct, and appoint their successors in said trust and office, and to perpetuate said trust for the benefit aud use of said society, as occasion may from time to time require.” And he closes by saying that the said trustees and their successors shall have full power to lease the estate, and “ do all other legal acts for the well-ordering and management of said estate, under the limitations and restrictions as hereinbefore expressed.”
This interpretátion of the devise was sought to be avoided *167 on the argument, by separating all the limitations and restrictions in respect to the enjoyment of the estate from that forbidding the sale or disposal of it, thereby conceding that they were limitations in trust, but insisting that the other constituted a condition for a breach of which a forfeiture was incurred. But the difficulty, in' the argument is that the same clause embraces not only the prohibition to sell, but enjoins the duty to lease, and the application of the rents to the use of the society, and also the management of the estate by the trustees, and which management contains the prohibition to lease for terms not exceeding thirty years. The separation is, therefore, not only arbitrary, but in disregard of the express words of the testator. The injunction to lease is as positive" as that not to sell, and both are embraced in the same clause; and if the term “proviso” is to be construed.as a condition in respect to the one, it must consistently bo so construed in respect to the other. And the same observations are also applicable to the other limitations.
This devise to the Ecclesiastical Society is in some respects peculiar. The possession", management, and control of the- estate are given exclusively to the trustees, who, according to the regulations, are invested with power to perpetuate their authority indefinitely. The only active duties of the society — the beneficiaries — is to receive the rents and profits for their own use and benefit. Of course, the trustees, subject to the limitations and restrictions annexed to the enjoyment'of the estate, possess all the power'and dominion over it that belongs to an owner, and are bound to take the same care of it and exercise the same attention, skill, and diligence in its management that a prudent and vigilant owner would exercise over his own. They are bound to rent the property, collect the rents, and pay them over to the society, to protect the possession, prevent waste, see that the taxes are paid, and, in the words of the testator, “ do all other legal acts for the well-ordering and management of the estate.” Being thus in the exclusive possession and control of the property, and having devolved upon them *168 the manifold duties incident thereto, it is quite clear that the trustees are clothed with the legal estate.
Mr. Jarman states the general principle: “ The mere fact that they are made agents in the application of the rents is sufficient to give them the legal estate, as in the casé of a simple devise to A. upon trust to. pay the rents to B.; and it is immaterial, in such case, that there is ho direct devise to the trustees, if the intention that they shall take the estate can be collected from the will. Hence, a devise to the intent that A., shall receive the rents and pay them over to B. would clearly vest the estate iu A.”* The same effect where the-duty is devolved upon them to pay taxes and make repairs.† And it is laid down generally that whenever a trust is created^ legal estate sufficient for the execution of the trust shall, if possible, be implied.‡ Indeed, it would be very difficult, if not impossible, for the trustees in the present case to execute their various and multiplied duties over this property without being clothed with the legal estate, under a mere naked power.
The distinction between a power and a trust is marked and obvious. Powers, as Chief Justice Wilmot observed, are never imperative; they leave the act to be done at the will of the party to whom they are given. Trusts are always imperative, and are. obligatory'upon the conscience of the party intrusted.§
Our conclusion is, that the construction urged by the plaintiffs, of the will, importing a condition, a breach of which forfeits the devise, is not well founded.
There is another ground of defence to this action that we arc of opinion is equally conclusive against the plaintiffs.
On an application of the society and trustees to the legislature of Connecticut to be permitted to sell the premises in question, setting out the reasons at large in support of it, the application was granted,- and an act passed accordingly. *169 This act authorized the trustees, together with a-third person, to sell the lands in the manner therein prescribed, and to invest the proceeds at interest, in bonds and mortgages of real estate of double the value of the amount invested, appropriating the interest to the use of the s’ociety, in the same maimer, and subject to the same use, as the rents or income of said property are by the will required to be appropriated.
The defendant is in possession under the title derived from a sale in pursuance of this act of the legislature.
In England, and in this country where a court of chancery exists, a charity of the description in question is a peculiar subject of the jurisdiction of that court, and in cases of abuse, or misuse of the charity by the trustees or agents in charge of it, this court wdll interpose to correct such abuses, and enforce the execution of the charitable purposes of the founder. So, by lapse of time, or changes as to the condition of the property and of the circumstances attending it, have made it . prudent and beneficial to the charity to alien the lands, and vest the proceeds in other funds or in a different manner, it is competent for this court to direct such sale and investment, taking care that no diversion of the gift be permitted. Lord Langdale, the master of the rolls, observed, in The Attorney-General v. The South Sea Company,* “It is plain that in ordinary eases a most important part of this duty is to preserve the property, but it may happen that the purposes of the charity may be best sustained and .promoted by alienating the specific property. The law has not-forbidden the alienation, and this court, upon various occasions,.with a view to promote interests of charities, has not thought it necessary to preserve the property in specie, but has sanctioned its alienation.”†
This power, in the State of Connecticut, it appears, is exercised by its legislature, as in the present instance. Many acts of the kind have been referred to in .the argument, ex *170 tending through a long series of years .down to the present time;
We cannot doubt that the power exists in the legislature, and it is not for this court to revise the facts upon which it has seen fit to exercise it.
Mr. Justice DAVIS dissented.
Judgment aefirmed.

 1 Sugden on Powers, 123, 7th London ed.

 2 Jarman on Wills, 202, Perkins’s Ed.

 Id. 201, and cases cited.

 Lewin on Trusts and Trustees, 164.

 2 Sugden on Powers, 588.

 4 Bevan, 458.

 See also Lewin on Trusts and Trustees, 373, and cases; and Shelford on Law of Mortmain, 687.